Karen King Mitchell, Chief Judge
Richard Ray appeals from the judgment and order, following a bench trial, committing him to the custody of the Department of Mental Health (DMH) as a sexually violent predator (SVP). Ray argues that the probate court erred in finding that he was an SVP because he did not commit a "sexually violent offense" as defined by Missouri's Sexually Violent Predator Act (SVPA) §§ 632.480-632.513.[1] Specifically, Ray argues that the elements of the Illinois offenses on which the probate court predicated its finding that Ray had committed a "sexually violent offense" are not substantially similar to an enumerated offense under the SVPA. Because the record contained sufficient evidence that Ray committed a "sexually violent offense" as defined in the SVPA, we affirm.
Background[2]
In 2014, Ray was convicted of theft and resisting arrest upon charges originating in Jackson County, Missouri, and he was confined to the Southeast Correctional Center in Charleston, Missouri. Before Ray's release, the State initiated a civil commitment proceeding under the SVPA, alleging that Ray was found guilty by the Circuit Court of Lake County, Illinois, of two "sexually violent offenses" as defined in § 632.480(4) of the SVPA. The State alleged that Ray "committed aggravated criminal sexual assault, a felony under Illinois Revised Statutes, Chapter 38, [¶] 12-14(b)(1), 1985, in that he knowingly committed an act of sexual penetration by penetrating the vagina of a child under 13 years of age with his finger[,]" and the elements of that offense are " 'substantially similar' to statutory sodomy first degree, § 566.062 ..., which is committed when a person knowingly penetrates the vagina of a child who is less than 14 years of age, with a finger, for gratifying sexual desire." Alternatively, the State alleged *774 that Ray "committed criminal sexual assault, a felony under Illinois Revised Statutes, Chapter 38, [¶] 12-13, 1985, in that he knowingly committed an act of sexual penetration by penetrating the anus of a child under 13 years of age with his penis[,]" and the elements of that offense are " 'substantially similar' to statutory sodomy first degree, § 566.062 ..., which is committed when a person knowingly penetrates the anus of a child under 14 years of age with his penis, for gratifying sexual desire." The State also alleged that Ray suffers from "a mental abnormality which makes him more likely than not to engage in predatory acts of sexual violence if released."
At trial, the State offered evidence that, in Illinois in 1987, Ray pleaded guilty to one count of "aggravated criminal sexual assault" for penetrating the vagina of his stepdaughter with his finger; the victim was under the age of thirteen at the time of the offense. The State also offered evidence that Ray was convicted in Illinois in 1991 of "criminal sexual assault" for inserting his penis into the anus of his stepson, who was also under the age of thirteen at the time. Ray does not dispute these convictions or the evidence submitted by the State to prove them.
Two witnesses testified for the State regarding Ray's prior sexual offenses: DMH psychologist Christopher Robertson and Amy Griffith, a licensed psychologist and clinical director of the Missouri Sex Offender Program within the Missouri Department of Corrections.
In 1979, at the age of 21 or 22,[3] Ray was convicted in Illinois of indecent liberties with a child for masturbating in front of his nine-year-old stepsister; he was placed on probation for two years. Several years later, Ray was charged in Illinois with two counts of aggravated criminal sexual assault for inserting his finger into his stepdaughter's vagina and two counts of aggravated criminal sexual abuse for placing his penis between his stepdaughter's thighs for sexual gratification. At trial in the present case, Griffith provided the following testimony about those charges, based on her November 2015 interview of Ray:
[Griffith]: [Ray] stated that his wife was pregnant and that she would not have sex with him or was not able to have sex with him. And he stated that he has high sex needs, a high sex drive, and so-and also that the victim [stepdaughter] walked around the house with no panties on.
[State]: And that was important to him-it was doing something to him. Was he able to explain what?
[Griffith]: He recalled, yes, and he recalled his stepdaughter stating: I'm horny, Daddy. And then she began-she sat on the couch, spread her legs, and began to touch herself. And then he indicated to her that if she did not stop doing that, that something was going to happen.
....
[State]: What does he do after he says the victim, the nine-year-old, is doing this stuff, what does he say happened next?
[Griffith]: He then stated: Long story short, I ended up fucking her in the ass.
....
[Griffith]: ... And that he continued to anally penetrate his stepdaughter with his fingers and his penis every day for close to a year. That was his report.
[State]: And this did contrast, in some ways, between the penis between the legs and thighs that he was charged with?
*775 [Griffith]: Yes. The official record indicated that he penetrated the victim's vagina with his fingers and penetrated the victim's thighs with his penis.
In 1987, Ray pleaded guilty to one count of aggravated criminal sexual assault for penetrating his stepdaughter's vagina with his finger, and he was sentenced to thirteen years' imprisonment. The other charges were dropped.
While incarcerated, details of another offense emerged, and Ray was charged with four counts of aggravated criminal sexual assault and one count of criminal sexual assault for inserting his penis into the anus of his nine-or-ten-year-old stepson on multiple occasions. Ultimately, in 1991, Ray pleaded guilty to one count of criminal sexual assault relating to conduct with his stepson. Griffith testified that, throughout Ray's descriptions of his Illinois offenses and elsewhere during her interview of him, "it was very clear that he, he believed that the victims not only initiated the sexual activity with him but enjoyed it."
During his incarceration in Missouri for theft and resisting arrest, Ray had two conduct violations for sexual misconduct. During the first, he pressed his call button and was openly masturbating when staff responded. Then, during a subsequent wellness check, the officer observed Ray lying on the bottom bunk and moving his hand in an up-and-down motion over his exposed, erect penis. Ray told Griffith that he masturbated three-to-five times per day, which indicated to Griffith "some pretty high sexual preoccupation."
Robertson diagnosed Ray with antisocial personality disorder and "pedophilic disorder non-exclusive type. Sexually attracted to both [genders]." According to Robertson, the combination of these disorders affects Ray's volitional capacity and predisposes him to acts of sexual violence. Griffith diagnosed Ray with both "a pedophilic disorder, sexually attracted to both boys and girls[, a]nd non-exclusive type" and "other specified paraphilic disorder to include hypersexuality[4 ] and urophilic disorder." Both psychologists described pedophilia as a lifelong, chronic disorder. And both concluded that Ray had serious difficulty controlling his behavior and was more likely than not to commit predatory acts of sexual violence if not confined in a secure facility. Ray attended the trial but did not testify or call any witnesses.
On July 18, 2017, the probate court issued its Judgment and Commitment Order finding Ray to be an SVP. The court concluded that Ray had pleaded guilty to both aggravated criminal sexual assault and criminal sexual assault and that the elements of those offenses are substantially similar to statutory sodomy first degree under § 566.062. The court found that Ray suffers from a "mental abnormality [that] makes him more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility." The court committed Ray to the custody of DMH "for control, care and treatment until such time as [his] mental abnormality has so changed that he is safe to be at large." This appeal follows.
Standard of Review
"In an SVP case, our review is limited to a determination of whether there was sufficient evidence admitted from which a reasonable fact finder could have found each necessary element by clear and convincing evidence." In re Care and Treatment of Parr , 482 S.W.3d 508, 511 (Mo. App. W.D. 2016) (quoting *776 In re Care and Treatment of Gormon , 371 S.W.3d 100, 103 (Mo. App. E.D. 2012) ). "The appellate court does not reweigh the evidence but determines only whether the judgment was supported by sufficient evidence." In re Care and Treatment of George , 515 S.W.3d 791, 795 (Mo. App. W.D. 2017) (quoting In re Care and Treatment of A.B. , 334 S.W.3d 746, 752 (Mo. App. E.D. 2011) ). "A judgment will be reversed on insufficiency of the evidence only if there is a complete absence of probative facts supporting the judgment." Id. (quoting A.B. , 334 S.W.3d at 752 ).
Where, as here, the question on appeal is one of statutory interpretation, our review is de novo. In re Care and Treatment of Holtcamp , 259 S.W.3d 537, 539 (Mo. banc 2008).
Analysis
Ray raises two points on appeal. He argues that the probate court erred in committing him to the custody of DMH because the evidence was insufficient to clearly and convincingly prove that he met the definition of a sexually violent predator in that the State failed to establish that (1) the predicate Illinois offense of "aggravated criminal sexual assault" contains elements substantially similar to the enumerated offense of statutory sodomy in the first degree (Point I); and (2) the predicate Illinois offense of "criminal sexual assault" contains elements substantially similar to first-degree statutory sodomy (Point II).
The SVPA provides for confinement of a person found to be a "sexually violent predator," defined as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who ... has pled guilty or been found guilty in this state or any other jurisdiction ... of a sexually violent offense." § 632.480(5)(a). On appeal, Ray disputes only the probate court's finding that he committed a "sexually violent offense." He does not dispute the court's finding that he suffers from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if released.[5]
The term "sexually violent offense" includes, in pertinent part, "the felonies of ... sodomy in the first degree, ... or any felony offense that contains elements substantially similar to the offenses listed above. " § 632.480(4) (emphasis added). The Illinois offenses to which Ray pleaded guilty and on which the State relies here-aggravated criminal sexual assault and criminal sexual assault-are not enumerated in § 632.480(4), so the issue is whether they qualify as "sexually violent offenses" under the "catch-all language." Both Illinois offenses are felonies,[6] so the only question here is whether their "elements [are] substantially similar to" a sexually violent offense listed in § 632.480(4)-a question that requires us to interpret the catch-all language of that section.[7]
*777 "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." Holtcamp , 259 S.W.3d at 539. Missouri courts give broad effect to the language of a statute to effectuate the legislature's purpose. Id. at 540.
Where the statute is remedial, it should be construed so as to meet the cases that are clearly within the spirit or reason of the law, or within the evil which it was designed to remedy, provided such interpretation is not inconsistent with the language used, resolving all reasonable doubts in favor of applicability of the statute to the particular case.
Id. (emphasis added).
The SVPA "does not impose punishment, but rather is rehabilitative." Id. An SVP's "confinement is for the purpose of holding the person until his mental abnormality no longer causes him to be a threat to others, and he is permitted to be released on a showing that he is no longer dangerous." Id. The SVPA "seeks, above all else, the protection of society against a particularly noxious threat: sexually violent predators." Id.
The operative words of the catch-all language-"elements substantially similar"-are not defined in the SVPA. In the absence of a statutory definition, we look to the dictionary to determine the plain and ordinary meaning of a word. Mantia v. Mo. Dep't of Transp. , 529 S.W.3d 804, 809 (Mo. banc 2017). "Similar" means "having characteristics in common," "very much alike" and "alike in substance or essentials." Similar , WEBSTER'S THIRD NEW INT'L DICTIONARY (2002). In the SVPA, the legislature indicated that more than just similarity is required; the similarity must be substantial, meaning "considerable" and to a "large degree." Substantial , WEBSTER'S THIRD NEW INT'L DICTIONARY (2002). Thus, the elements of the predicate offenses must have considerable characteristics in common with and be, to a large degree, very much alike in substance and essentials to one of the enumerated sexually violent offenses. By its plain terms, however, § 632.480(4) requires that only the elements of the offenses being compared be substantially similar. The legal term "elements" refers to only those "constituent parts of a crime" that the prosecution must prove to sustain a conviction, typically consisting of an actus reus, mens rea, and causation. Elements , BLACK'S LAW DICTIONARY (10th ed. 2014).
Under Illinois criminal law in effect at the relevant time, an "accused commits aggravated criminal sexual assault if ... the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed."[8] Ill.
*778 Stat. Ch. 38 ¶ 12-14(b)(1) (1985). "Sexual penetration" includes "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." Ill. Stat. Ch. 38 ¶ 12-12(f) (1985).
Under relevant Missouri law, "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." § 566.062.1. "Deviate sexual intercourse" is "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim." § 566.010(1). In lay terms, like the Illinois law, the Missouri offense prohibits skin-to-skin contact of the genitals and penetration.
We conclude that the Illinois offense of aggravated criminal sexual assault contains elements substantially similar to the Missouri offense of statutory sodomy in the first degree. First, the element of the victim's age-under thirteen in Illinois and under fourteen in Missouri-is very much alike in both offenses. Although the Missouri offense includes one additional age (fourteen-year-olds) and the Illinois offense includes an age-gap provision (excepting offenders who are close in age to their victims) not found in the Missouri offense, the overall class of victims and offenders encompassed by this element of the two offenses are substantially similar. Second, the element identifying the prohibited acts in each offense, although there are some differences, contain several characteristics in common; primarily, both offenses criminalize skin-to-skin touching of the genitals and penetration, however slight, of another's sex organ or anus.[9]
As Ray notes, the Illinois offense of aggravated criminal sexual assault does not contain a "purpose" element whereas the Missouri offense requires a finding that the deviate sexual act was "for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim." § 566.010(1). "The language 'for the purpose of arousing or gratifying sexual desire' is meant 'to exclude innocent contacts from being deemed criminal conduct.' "
*779 State v. Gaines , 316 S.W.3d 440, 456 (Mo. App. W.D. 2010) (quoting State v. Love , 134 S.W.3d 719, 723 (Mo. App. S.D. 2004) (holding that "defendant's touching of the crotch and breast areas of the children was not innocent contact," and therefore, evidence was sufficient to establish defendant's intent to arouse or gratify either his or her sexual desire)). This court's statement in Gaines about the "purpose" element followed cases in which Missouri courts found "no other discernible reason" (other than sexual arousal or gratification) for an adult to touch a child sexually. See, e.g., State v. McMeans , 201 S.W.3d 117, 121 (Mo. App. S.D. 2006) (finding sufficient evidence that adult offender engaged in conduct for purpose of sexual arousal where there was "no other discernable reason" for her to repeatedly manipulate the vaginal area of a 22-month-old during a diaper change). Adoption of the "no other discernable reason" rule in cases involving adults and children led courts to clarify that additional evidence of intent would be required in cases involving child-on-child conduct. In In re J.A.H. , 293 S.W.3d 116, 122 (Mo. App. E.D. 2009), the Eastern District of this court stated,
We recognize that, in certain circumstances, McMeans and other cases which have found that an adult's actions toward a child were done for "no other discernible reason" but for the purpose of sexual arousal or gratification may be applicable in the juvenile context. We find it difficult, however, to apply McMeans in this case, where Juvenile was eight or nine and T.H. was five, six or seven, and there was no evidence regarding the Juvenile's behavioral development or knowledge of sexual subject matter. Without such evidence or more detailed information regarding the circumstances of the touchings, we are unwilling to find that an eight or nine year old touches his penis to the mouth of a five or six year old for no discernible reason other than sexual arousal or gratification.
Id. ; see also In re A.B. , 447 S.W.3d 799, 806 (Mo. App. W.D. 2014) (finding evidence insufficient to establish that juvenile touched second juvenile's genitals for purpose of arousing or gratifying sexual desire).
Missouri defines statutory sodomy in the first degree without regard to the age of the perpetrator, meaning that child-on-child contact could result in a charge of first-degree statutory sodomy, necessitating further evidence that the contact was not innocent. The Illinois offense of aggravated criminal statutory assault criminalizes the same conduct (and protects the same class of victims) by including an age requirement for the perpetrator that excludes child-on-child contact from the range of conduct that may be charged as aggravated criminal sexual assault. Because Missouri's "purpose" element and Illinois's perpetrator-age element serve the same purpose and the elements of the two offenses need only be substantially similar, rather than identical, this difference between the two offenses does not preclude a finding that they are substantially similar for purposes of the SVPA.
As such, the elements of aggravated criminal sexual assault in Illinois are substantially similar to the elements of first-degree statutory sodomy in Missouri. To the extent any of the differences discussed above raise reasonable doubts about whether the Illinois offense is a "sexually violent offense" under the SVPA, those doubts are resolved "in favor of applicability of the statute to the particular case" because this case is clearly within the spirit of the SVPA. See Holtcamp , 259 S.W.3d at 540.
*780 Finally, Ray framed his appeal as a challenge to the sufficiency of the evidence, and in so doing, he argued that there was "a complete absence of probative fact supporting an element necessary to sustain a verdict," with that element being that he committed a sexually violent offense. Our review of the evidence leads us to a very different conclusion. The elements of the enumerated sexually violent offense of statutory sodomy in the first degree are "deviate sexual intercourse with another person who is less than fourteen years old." § 566.062.1. "Deviate sexual intercourse" includes "a sexual act involving the penetration, however slight, of the ... female sex organ ... by a finger ... for the purpose of arousing or gratifying the sexual desire of any person...." § 566.010(1). Ray pleaded guilty to aggravated criminal sexual assault for penetrating the vagina of his under-thirteen-year-old stepdaughter with his finger. "Touching a woman's vagina is an inherently sexual act, which can alone serve as evidence of Defendant's intent to arouse or gratify either his or her sexual desire." State v. Ganzorig , 533 S.W.3d 824, 830 (Mo. App. E.D. 2017). And here the record contains substantial evidence that Ray engaged in that behavior to arouse or gratify his or his stepdaughter's sexual desire. He prefaced his description of the assault by telling Griffith that his wife was pregnant and would or could not have sex with him, that he had a high sex drive, and that his stepdaughter walked around the house with no panties on. He told Griffith that his stepdaughter said, "I'm horny, Daddy," and touched herself. Griffith testified that, throughout Ray's descriptions of his Illinois offenses and elsewhere during her interview of him, "it was very clear that he believed that the victims not only initiated the sexual activity with him but enjoyed it." Thus, the evidence was sufficient to clearly and convincingly prove that Ray committed a sexually violent offense.
Point I is denied.
Because we find that the predicate crime of aggravated criminal sexual assault is a sexually violent offense under the SVPA, we need not address Ray's alternative argument that the predicate crime of criminal sexual assault is a sexually violent offense (Point II).
Conclusion
Because the record contains evidence sufficient to clearly and convincingly prove that Ray committed a "sexually violent offense" as defined in the SVPA, we affirm the probate court's judgment committing him as an SVP to secure confinement in the custody of DMH.
Victor C. Howard and Lisa White Hardwick, Judges, concur.

All statutory references are to the Revised Statutes of Missouri, as updated through the 2016 Supplement, unless otherwise noted.

We view the evidence "in the light most favorable to the judgment, accepting as true all evidence and reasonable inferences favorable to the judgment and disregarding all contrary evidence and inferences." In re Care and Treatment of George , 515 S.W.3d 791, 795 (Mo. App. W.D. 2017) (quoting In re Care and Treatment of A.B. , 334 S.W.3d 746, 752 (Mo. App. E.D. 2011) ).

Ray was born in 1957.

Hypersexuality involves an unusual interest in and time spent thinking about sex.

In the argument section of his brief, Ray asserts that he is not likely to reoffend if released, but neither of his two points relied on addresses that component of the SVPA or the probate court's findings on that issue. "A reviewing court is obliged to determine only those questions stated in the points relied on. Issues only in the argument portion of the brief are not presented for review." Lusher v. Gerald Harris Constr., Inc. , 993 S.W.2d 537, 544 (Mo. App. W.D. 1999) (quoting Martin v. McNeill , 957 S.W.2d 360, 366 (Mo. App. W.D. 1997) ).

See Ill. Stat. Ch. 38 ¶ 12-14 (1985).

Only one Missouri court has previously interpreted the catch-all language of § 632.480(4). In In the Matter of the Care and Treatment of P.L. , 561 S.W.3d 62 (Mo. App. E.D. 2018), the Eastern District of this court held that the elements of the Colorado offense of attempted sexual assault on a child are substantially similar to the enumerated Missouri offense of attempted statutory sodomy in the first degree, and thus, P.L.'s Colorado conviction for attempted sexual assault on a child was a "sexually violent offense" under the SVPA. Id. at 67. According to Case.net, the Eastern District's decision is subject to an application for transfer filed with the Missouri Supreme Court on October 9, 2018.

As Ray points out, Illinois defines "aggravated criminal sexual assault" to include a total of eight different ways in which an accused could commit the offense, including five ways that do not specify the age of the victim, which is an element of the enumerated offense of statutory sodomy in the first degree. Ray relies on the expansive nature of Illinois's definition to argue that the elements of aggravated criminal sexual assault are not substantially similar to those of first-degree statutory sodomy. We find Ray's argument unpersuasive because it is clear from the record that he pleaded guilty to violating Ill. Stat. Ch. 38 ¶ 12-14(b)(1) (1985), which states, an "accused commits aggravated criminal sexual assault if ... the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." The fact that there are other ways in which he could have committed aggravated criminal sexual assault in Illinois at that time is not relevant to our inquiry.

Ray argues that the Illinois and Missouri statutes criminalize different conduct because the Illinois offense requires evidence of penetration, which he suggests means "contact between the perpetrator's genitalia and the victim's genitalia, mouth or anus," but the Missouri offense does not necessarily involve the perpetrator's genitalia. Ray's argument is inconsistent with the plain language of the Illinois statute, which defines sexual penetration by contact to include acts that do not involve the perpetrator's genitalia. Penetration can mean penetration of the victim's genitalia with "any body part" (Illinois) and "finger, instrument or object" (Missouri). More importantly, the conduct prohibited by the Illinois statute need not perfectly overlap with the conduct prohibited by the Missouri statute and vice versa because the elements of the two offenses need be only substantially similar under the SVPA; they need not be identical.